MICHAEL M. NEWTON, an Infant, by ELEANOR NEWTON, His Guardian ad Litem, Plaintiff, *v.* BOARD OF EDUCATION OF HALF HOLLOW HILLS, CENTRAL SCHOOL DISTRICT No. 5, Defendant.

Supreme Court, Special Term, Suffolk County, November 9, 1966.

*Taback & Hyams* for plaintiff. *Bernard Helfenstein* for defendant.

JACK STANISLAW, J. The infant plaintiff was injured because of the alleged negligence of the defendant. The accident happened at the school playground during a lunch recess, and plaintiff has already examined the defendant board of education by its superintendent, the principal of the school, the scene of the accident, and two teachers on duty in the playground at the time of the occurrence. Following the conclusion of the examinations plaintiff served a notice for discovery and inspection upon the defendant (CPLR 3120). This notice was addressed to the discovery of a report of the accident, a " teachers' manual ", and the names and addresses of the students right at the site of the accident (the " monkey bars ") when plaintiff was injured. The defendant has moved for a protective order vacating plaintiff's notice in its entirety.

As to the accident report, defendant points out that it was prepared pursuant to routine accident procedures only, and not because some board of education rule or regulation so specified. Thus, it is argued, the report does not constitute a part of the school's regular business, but is rather material assembled in anticipation of litigation. Next, it is argued that the plaintiff has not been reasonably specific as to which, if any, so-called " teachers' manual " he would discover. Finally, defendant notes that the names of proximate students are not a discoverable document, and are attorneys' work product in any event.

Plaintiff quotes at length from the several examinations to support the propriety of his notice. All four of the defendant's examinees testified with reference to an accident report. The superintendent prepared an administrative manual for school principals containing a directive that reports of accidents be immediately filed. The principal here got one such manual, knew of what he characterized as the regular procedure of processing and filing accident reports, and had then conveyed at least the substance of this requirement to one of the teachers who testified. The other teacher was the one who actually wrote up a report.

Is the accident report referred to discoverable? We think the excerpted testimony presented by plaintiff establishes the existence of a regular internal school routine to be followed in cases of accident. Against this positive identification of the reports as made in the regular course of defendant's business we have only defendant's attempt to differentiate them as prepared for litigation and thus immune, because they were made following an

accident and ultimately came to defendant's insurer. If the report was part of the regular business procedure it is hardly capable of immunization for being set in motion by the happening of an accident. If defendant's hypothesis were accepted there could be no discovery of such reports since they must obviously be made (regularly) following an accident. The only time they might then be subject to disclosure would be if there had been no accident — but then there would be no report. There is ample basis for the discovery of the report made here by school employees as provided by administrative directive generally regulating regular internal "business" procedures. (*Bloom* v. *New York City Tr. Auth.*, 20 A D 2d 687; *Bresson* v. *Radio City Music Hall Corp.*, 23 A D 2d 581; *Mosier* v. *Van Der Horst Research Corp.*, 25 A D 2d 938; *Linton* v. *Lehigh Val. R. R. Co.*, 25 A D 2d 334; *Davis* v. *Eastman Kodak Co.*, 45 Misc 2d 1006; *Menyweather* v. *Niagara Frontier Tr. System*, 50 Misc 2d 244, affd. 25 A D 2d 821; cf. *Gunther* v. *Roaman's, Inc.*, 24 A D 2d 738; *Bojanek* v. *Niagara Frontier Tr. System*, 25 A D 2d 486.)

The defendant's objection to discovery of the so-called teachers' manual or handbook, that the item is insufficiently identified, might be charitably categorized as perhaps unintentional. The superintendent acknowledged that a "Building Principal's Administrative Manual", otherwise known as a "Teachers' Handbook", was distributed to teachers prior to this accident, although he did not recall whether it contained anything about playground supervision. One of the teachers acknowledged receiving a "Teachers' Handbook", but was also unsure about the substance of its reference to playgrounds. Plaintiff, in his notice, asks for discovery of "The Teachers' Manual distributed by the school authorities to the teachers". We fail to see the lack, in context, of plaintiff's reasonable specification of the item to be examined.

Lastly, as to the names and addresses of the other students on the "monkey bars" when plaintiff got hurt, one of the teachers testified to seeing about five or six children at that scene of the accident. At least two of them could be positively identified, but identification was objected to at the examination and the question remained unanswered. Technically, plaintiff's procedure to get the names sought in the notice to discover (CPLR 3120), might better have been pursued by motion pursuant to CPLR 3124. Even then, if only a single answer to a single question were involved and the question found unobjectionable, the answer could be more simply provided for by a single sworn statement rather than directing the resumption

of the examination for just that one inquiry. Therefore, although defendant has properly indicated that these names and addresses, as such, do not constitute a discoverable item, we shall consider the substantive issue rather than penalize plaintiff by requiring another motion to bring us right back to the same point. but via a different procedural route.

We know, as a result of the examinations before trial, that there are no less than two witnesses who can be identified. To this extent plaintiff has fixed the information the subject of his disclosure proceedings, with reasonable particularity (see *Rios* v. *Donovan,* 21 A D 2d 409; *Votey* v. *New York City Tr. Auth.,* 46 Misc 2d 554).

The names of witnesses were not subject to disclosure very often prior to the enactment of the CPLR. Nevertheless, such inquiry had been deemed proper on occasion when a witness was shown to be both present at and an active participant in the events relied upon by the plaintiff (*Pistana* v. *Pangburn,* 2 A D 2d 643). There is hardly any doubt that the witnesses here were at the actual place of the accident and were participating in the events (a game of tag). For this reason, which in essence defers to trial by fact as opposed to trial by battle, as the whole of the CPLR does in theory, the names of the witnesses who were right there and may best be able to let everyone involved know what happened and how, should be and are here to be supplied (*Matter of Pennino,* 41 Misc 2d 791; *Spano* v. *Fralick,* 48 Misc 2d 375; *Majchrzak* v. *Hagerty,* 49 Misc 2d 1027).

Defendant's motion for a protective order is denied in its entirety.